FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 30, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENESSA V.,[1] | No. 1:18-cv-03138-MKD |
| Plaintiff, | |
| | ORDER GRANTING PLAINTIFF'S |
| vs. | MOTION FOR SUMMARY |
| | JUDGMENT AND DENYING |
| COMMISSIONER OF SOCIAL | DEFENDANT'S MOTION FOR |
| SECURITY, | SUMMARY JUDGMENT |
| Defendant. | |
| | ECF Nos. 17, 19 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 17, 19. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

grants Plaintiff's Motion, ECF No. 17, and denies Defendant's Motion, ECF No. 19.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B). The Commissioner has established a five-step sequential

analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R.

§ 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's

work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On June 3, 2014, Plaintiff applied for Title XVI supplemental security income benefits, alleging a disability onset date of October 1, 2008. Tr. 15..[2] The application was denied initially, Tr. 96-99, and on reconsideration, Tr. 105-11. Plaintiff appeared in person at a hearing before an administrative law judge (ALJ) on May 12, 2017. Tr. 31-71. On June 28, 2017, the ALJ denied Plaintiff's Title XVI claim. Tr. 12-30.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 3, 2014, the application date. Tr. 17. At step two, the ALJ found Plaintiff had the following severe impairments: major depressive disorder and social phobia disorder. Tr. 17. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled

---

[2] Plaintiff's Title XVI application is not included in the administrative record. However, there are multiple references throughout the record to Plaintiff's application date and alleged disability onset date. *See* Tr. 25, 36, 177, 182.

the severity of a listed impairment. Tr. 18. The ALJ then concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> [Plaintiff] is limited to simple routine tasks in very routine work situations; she should have no interaction with the general public as part of the job tasks; she is limited to occasional exposure to [the] general public without having to actually interact with them; she has no problems with supervisors; and she is limited to occasional interaction with small groups of coworkers.

Tr. 19.

At step four, the ALJ found Plaintiff did not have any past relevant work. Tr. 24. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from a vocational expert, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as industrial cleaner, kitchen helper, and laundry worker II. Tr. 24-25. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, since June 3, 2014, the date the application was filed. Tr. 25.

On June 6, 2018, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence; and

2. Whether the ALJ properly considered Plaintiff's symptom claims.

ECF No. 17 at 2.

**DISCUSSION**

**A.    Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Roland Dougherty, Ph.D., Suzanne Damstedt, M.A., Chris Clark, LMHC, Richard Borton, Ph.D., and Diane Fligstein, Ph.D.  ECF No. 17 at 5-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202.  "In addition, the regulations

give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.' " *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir.

2014) (alteration in original); *see* 20 C.F.R. § 416.913 (2013).[3]  However, an ALJ

is required to consider evidence from non-acceptable medical sources.  *Sprague v.*

*Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987); 20 C.F.R. § 416.913(d) (2013).

"Other sources" include nurse practitioners, physicians' assistants, therapists,

teachers, social workers, spouses and other non-medical sources.  20 C.F.R. § 20

C.F.R. § 416.913(d) (2013).  An ALJ may reject the opinion of a non-acceptable

medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at

1161.

### 1.  Dr. Dougherty

Examining psychologist Roland Dougherty, Ph.D., conducted a

psychological evaluation of Plaintiff in February 2015.  Tr. 289-93.  Dr. Dougherty

diagnosed Plaintiff with major depressive disorder and chronic social phobia.  Tr.

292.  Dr. Dougherty opined that Plaintiff had the ability to perform detailed and

complex tasks.  Tr. 293.  He reported that Plaintiff should be able to accept

---

[3] For cases filed prior to March 27, 2017, the definition of an acceptable medical

source, as well as the requirement that an ALJ consider evidence from non-

acceptable medical sources, are located at 20 C.F.R. § 416.913(d) (2013).  The

regulations were amended on March 27, 2017, but the amendment applies to

claims filed on or after March 27, 2017.  20 C.F.R. §§ 416.927, 416.902(a)(6)-(8).

instructions from supervisors, although she would likely have some difficulty interacting with coworkers and the public due to her social phobia.  Tr. 293.  He indicated that Plaintiff's depression and social phobia would likely make it difficult for her to deal with the stress encountered in the workplace.  Tr. 293.  Dr. Dougherty also opined that Plaintiff would likely have difficulty maintaining regular attendance in the workplace and completing a normal workday/workweek without interruption from her depression and social phobia.  Tr. 293.

The ALJ gave Dr. Dougherty's opinion partial weight.  Tr. 22.  Because Dr. Dougherty's opinion was contradicted by the nonexamining opinion of Dr. Borton,[4] Tr. 73-83, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Dougherty's opinion.  *Bayliss*, 427 F.3d at 1216.

_____

[4] In February 2015, state agency psychological consultant, Richard Borton, Ph.D., opined that Plaintiff was able to carry out all ordinary activities with moderate limitations in sustaining concentration without distractions.  Tr. 80.  He noted that Plaintiff was limited to occasional social interactions with the public and coworkers, but that she would be capable of intermittent interactions.  Tr. 81.  Dr. Borton opined that Plaintiff's depressive symptoms would interfere occasionally with motivation to attend work and complete normal workdays, but that she would be capable of sustaining a normal workday/workweek.  Tr. 80.

First, Plaintiff argues that the ALJ failed to apply the appropriate analytical factors to Dr. Dougherty's opinion, citing 20 C.F.R. § 416.927(c) and *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017). ECF No. 19 at 7-8. The ALJ must evaluate every medical opinion received according to the factors set forth by the Social Security Administration. 20 C.F.R. § 416.927(c). These factors include the provider's treating or examining relationship with the claimant, the length, nature, and extent of the treatment relationship, supportability, consistency, specialization, and any other relevant factors that the ALJ may choose to consider. 20 C.F.R. § 416.927(c). Although the ALJ did not detail these factors in the same order as the regulation in a single paragraph, the ALJ did consider the § 416.927(c) factors when evaluating Dr. Dougherty's opinion. The ALJ noted that Dr. Dougherty conducted a consultative mental health evaluation, discussed some of the mental status examination findings, and compared certain aspects of his opinion to the record. Tr. 20, 22-23. The ALJ discounted this opinion, finding that it was inconsistent with the medical evidence and stating that Plaintiff's mood and anxiety were stable with medication despite intermittent stressors. Tr. 22-23. The ALJ adequately considered the applicable § 416.927(c) factors.

_____

Second, Plaintiff argues that the ALJ improperly found Dr. Dougherty's opinion was inconsistent with the medical evidence because treatment notes documenting her activities showed improvement in symptoms. Tr. 22-23. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ may also discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 541, 601-02 (9th Cir. 1999). Here, the ALJ noted that treatment notes showed improvement in symptoms to the extent that Plaintiff was going out more as evidenced by getting her nails done, attending a celebration for her grandparents' wedding anniversary, and regularly traveling to Seattle. Tr. 22-23; *see* Tr. 342, 456, 498. Plaintiff argues that the record reflects one instance of Plaintiff getting her nails done, attendance at one family event, and the majority of her trips to Seattle were for her daughter's medical appointments. ECF No. 17 at 8. The ALJ failed to explain how Plaintiff's ability to get her nails done once, Tr. 339, attend one family celebration, Tr. 498, and accompany her daughter to medical appointments, Tr. 447, was inconsistent with the limitations Dr. Dougherty opined, such as difficulty interacting with coworkers and the public, dealing with workplace stress, maintaining regular attendance in the workplace, and completing a normal workday/workweek without interruption from her depression and social

phobia.  Tr. 293.  Without further explanation of how these limited activities were inconsistent with the level of impairment Dr. Dougherty opined, the ALJ's finding is not supported by substantial evidence.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (recognizing that a claimant's ability to engage in activities that were sporadic or punctuated with rest, such as housework, occasional weekend trips, and some exercise, do not necessarily support a finding that she can engage in regular work activities).

Moreover, Plaintiff argues that the ALJ improperly determined there was no evidence in the record to support a limitation related to Plaintiff maintaining attendance in the workplace.  Tr. 23.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  The ALJ noted that Plaintiff regularly attended mental health appointments and there was no indication of frequent "no shows."  Tr. 23.  However, as argued by Plaintiff, the record demonstrates that when Plaintiff began therapy, she typically only had appointments a few times per month for approximately one hour each time.  ECF No. 17 at 9; *see, e.g.,* Tr. 506 (December 21, 2015: 60 minute appointment); Tr. 505 (January 5, 2016: 60 minute appointment); Tr. 504 (January 14, 2016: 60 minute appointment); Tr. 502 (January 28, 2016: 30 minute appointment); Tr. 497 (February 18, 2016: 60 minute appointment); Tr. 496 (May 3, 2016: 60 minute appointment); Tr. 491 (June 1, 2016: 60 minute appointment); Tr. 486 (June 10,

2016: 60 minute appointment).  Further, two other providers in the record,

Plaintiff's treating therapist and an examining licensed mental health counselor,

opined that Plaintiff's mental impairments would limit her ability to work only one

to 10 hours per week. Tr. 306, 323.  Without further explanation of how this

limited activity of participating in therapy sessions was inconsistent with Dr.

Doughtery's opinion that Plaintiff would have difficulty maintaining regular

attendance in the workplace due to her depression and social phobia, Tr. 293, the

ALJ's finding is not supported by substantial evidence.  This was not a specific and

legitimate reason to discount Dr. Dougherty's opinion.

Third, Plaintiff argues that the ALJ improperly assigned less weight to Dr.

Dougherty's opinion based on a finding that Plaintiff's mood and anxiety were

stable with medication.  ECF No. 17 at 9 (citing Tr. 23).  The effectiveness of

treatment is a relevant factor in determining the severity of a claimant's symptoms.

20 C.F.R. § 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d

1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with

medication are not disabling for purposes of determining eligibility for benefits);

*Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a

favorable response to treatment can undermine a claimant's complaints of

debilitating pain or other severe limitations).  The ALJ fails to cite any evidence in

the record to support the finding that Plaintiff's mood and anxiety were stable with

medication. The ALJ indicated that Plaintiff was sleeping well with Trazodone, Tr. 21, and that her hypothyroidism was treated with medication, Tr. 17, but failed to mention any other medications in the decision other than a few vague references. The ALJ referenced Plaintiff "complying with medication," however, a review of this citation in the record shows that although Plaintiff noted medication compliance with once-daily Bupropion and initially denied side effects or untreated symptoms, after further inquiry she reported some ongoing isolation where she made excuses to avoid seeing her friends, and had some breakthrough worry, hopelessness, and occasional tearfulness. Tr. 21 (citing Tr. 492). The provider increased her dosage of Bupropion, and the ALJ noted that Plaintiff "denied side effects from medication" one month later. Tr. 21 (citing Tr. 492). The ALJ also made reference to Plaintiff reporting that her medication helped her to deal with an issue with a family member in July 2016, however a review of this citation in the record shows that Plaintiff stated, "[m]y medication has helped me deal with this but I still have a lot of sadness and worry. I think the dose should be higher." Tr. 21 (citing Tr. 483). Other than these references to compliance with medication, denial of side effects, and request for a higher dosage, the remainder of the ALJ's decision is silent as to the use of medication to help with Plaintiff's mood or anxiety. The ALJ's finding is not supported by substantial evidence. S*ee Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (recognizing that

conclusory reasons do not "achieve the level of specificity" required to justify an

ALJ's rejection of an opinion). This was not a specific and legitimate reason to

discount Dr. Dougherty's opinion.

### 2. Ms. Damstedt

Plaintiff's treating therapist, Suzanne Damstedt, M.A., evaluated Plaintiff

and completed a mental health assessment on December 6, 2016. Tr. 323-26. She

diagnosed Plaintiff with single episode moderate major depressive disorder and

noted that Plaintiff reported having "a lot of anxiety and social anxiety." Tr. 323.

She noted that Plaintiff had specific mental issues that required special

accommodations or considerations and indicated that being around people and

participating in interviews limited Plaintiff's ability to work, look for work, or

prepare for work. Tr. 323. Ms. Damstedt opined that Plaintiff was limited to

working one to 10 hours per week. Tr. 323. The ALJ gave Ms. Damstedt's

opinion partial weight. Tr. 23. Because Ms. Damstedt was an "other source," the

ALJ was required to provide germane reasons to discount her opinion. *Dodrill*, 12

F.3d at 918.

Plaintiff argues that the ALJ failed to provide any reason for not fully

crediting Ms. Damstedt's opinion. ECF No. 17 at 14-16. An ALJ must give

reasons "germane" to each source in order to discount evidence from non-

acceptable medical sources. *Ghanim*, 763 F.3d at 1161. The ALJ's entire

ORDER - 17

explanation for assigning only partial credit to Ms. Damstedt's opinion was, "I agree the claimant has some social limitations. However, these limitations do not preclude all work activity." Tr. 23. The ALJ failed to explain how he reached this conclusion, or to identify what evidence he relied upon in reaching this conclusion, and thus, his decision regarding the weight assigned to Ms. Damstedt's opinion is unreviewable. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ failed to provide germane reasons to discount Ms. Damstedt's opinion.

### 3. Mr. Clark

Licensed mental health counselor, Chris Clark, evaluated Plaintiff and completed a mental health assessment on December 15, 2015. Tr. 306-09. He diagnosed Plaintiff with moderate major depressive disorder. Tr. 306. He noted that Plaintiff had specific emotional issues that required special accommodations or considerations and reported that Plaintiff's major depressive disorder limited her ability to work, look for work, or prepare for work. Tr. 306. He opined that Plaintiff's extreme emotional liability, poor stress tolerance, and obsessive rumination interfered with task completion on a timely and reliable basis. Tr. 306. Mr. Clark opined that Plaintiff was limited to working one to 10 hours per week. Tr. 306.

The ALJ failed to discuss Mr. Clark's opinion or assign a level of weight to it. An ALJ must give reasons "germane" to each source in order to discount

evidence from non-acceptable medical sources. *Ghanim*, 763 F.3d at 1161; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so"). Defendant argues that because the ALJ properly rejected Dr. Dougherty's opinion regarding workplace attendance, substantial evidence supports the ALJ's implicit rejection of Mr. Clark's and Ms. Damstedt's opinions that Plaintiff was limited to working one to 10 hours per week. ECF No. 19 at 14 (citing Tr. 293, 306, 323). However, as discussed *supra*, the ALJ did not properly reject Dr. Doughtery's opinion regarding workplace attendance. Rather, the ALJ failed to explain how Plaintiff's participation in 60-minute therapy sessions a few times per month was inconsistent with Dr. Dougherty's opinion that Plaintiff would experience difficulty maintaining regular attendance in the workplace due to her depression and social phobia. Tr. 293. The ALJ determined that Plaintiff's major depressive disorder and social phobia disorder were severe impairments. Tr. 17. Mr. Clark's opinion specifically addressed workplace limitations due to Plaintiff's major depressive disorder. Tr. 306-09. The ALJ erred in failing to discuss Mr. Clark's opinion.

Defendant argues this error is harmless. ECF No. 19 at 13-15. The harmless error analysis may be applied where even a treating source's opinion is disregarded

without comment. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). An error is harmful unless the reviewing court "can confidently conclude that no ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Defendant asserts that there was "no reasonable likelihood that [Mr. Clark's and Ms. Damstedt's opinions] would have affected the ALJ's assessment of Plaintiff's RFC." ECF No. 19 at 14-15. However, Dr. Dougherty, Mr. Clark, and Ms. Damstedt all opined that Plaintiff had mental limitations that would interfere with her ability to complete a normal workday/workweek. Tr. 293, 306, 323. The ALJ wholly ignored Mr. Clark's opinion, failed to provide germane reasons for discounting Ms. Damstedt's opinion, and improperly rejected Dr. Dougherty's opined limitation related to workplace attendance. Tr. 22-23. During the administrative hearing, the ALJ provided hypotheticals to the vocational expert that included the inability to sustain work activity beyond 20 percent of the workday, and limitations for absences from work and the need to leave work for the day due to a flare up of symptoms two or more days a month. Tr. 67-68. The vocational expert testified that no work would be available to an individual with such attendance related limitations. Tr. 68. The ALJ and Plaintiff's counsel confirmed on the record that these hypotheticals incorporated Mr. Clark's and Ms. Damstedt's opined limitations that Plaintiff could work only one to 10 hours per

week, as well as Dr. Dougherty's opined limitation that Plaintiff would have difficulty maintaining regular attendance in the workplace and completing a normal workday/workweek. Tr. 69-70. Based on this record, without some form of a workplace attendance limitation incorporated into the RFC, the Court cannot confidently conclude that the disability determination would remain the same were the ALJ to fully credit Mr. Clark's opinion. When the ALJ improperly ignores significant and probative evidence in the record favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete residual functional capacity determination." *Hill*, 698 F.3d at 1161; *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). The Court is unable to reconcile Mr. Clark's conclusion that Plaintiff is limited to working one to 10 hours per week with the ALJ's RFC that results in employability.

The ALJ's error was not harmless. On remand, the ALJ is instructed to specifically weigh Mr. Clark's opinion, take testimony from a medical expert who has had the opportunity to review all of the medical evidence of record, reconsider the medical evidence in light of the ALJ's evaluation of the opinions of Mr. Clark, Ms. Damstedt, and Dr. Dougherty, the other medical sources, and the medical expert, and, if necessary, resolve conflicts in the medical evidence.

*4. Other Challenges*

Plaintiff raises several other challenges to the ALJ's evaluation of the medical opinion evidence and Plaintiff's symptom testimony. ECF No. 15 at 5-9, 14-21. However, because this case is remanded for the ALJ to reconsider medical opinion evidence, the Court declines to address Plaintiff's other challenges here. The ALJ is instructed to conduct a new sequential analysis on remand, including reconsidering Plaintiff's symptom testimony, in light of the new analysis of the medical evidence.

**B.    Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 17 at 2.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague*, 812 F.2d at 1232 (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has

"stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where 1) the record has been fully developed and further administrative proceedings would serve no useful purpose; 2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and 3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, further proceedings are necessary. As discussed *supra*, the ALJ erred by failing to evaluate Mr. Clark's opinion regarding the ability to complete a normal workday/workweek due to her mental impairments. However, Mr. Clark's opinion was contradicted by Dr. Borton who opined that Plaintiff's depressive symptoms would interfere occasionally with motivation to attend work and complete normal workdays, but that she would be capable of sustaining a normal workday/workweek. Tr. 80. The ALJ assigned partial weight to Dr. Borton's opinion. Tr. 23. Even if the ALJ were to have fully credited Mr. Clark's opinion,

the evidence would present an outstanding conflict for the ALJ to resolve. Thus, further proceedings are necessary for the ALJ to resolve potential conflicts in the evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 17, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 19, is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED April 30, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE